UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAULETTA FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:14-CV-01560-SPM |
| | ) | |
| ST. LOUIS COUNTY BOARD OF | ) | |
| POLICE COMMISSIONERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Robert Vogel, Robert Morley, John Blake and St. Louis County Board of Police Commissioners (collectively, "Defendants"). (Doc. 11). The claims against Board were dismissed after the filing of the instant motion. (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 14). For the following reasons, the Court will grant Defendants' motion.

**I.    FACTUAL BACKGROUND**[1]

On August 14, 2009, at approximately 2:30 a.m., St. Louis County police officer Robert Vogel ("Detective Vogel") responded to a hospital call about a female victim. The victim reported that she had been physically and sexually assaulted by a man, later identified as Kenneth Roberts ("Roberts"), in the basement of a house at a particular address in St. Louis

---

[1] Rule 7-4.01 (E) of the Local Rules of the United States District Court for the Eastern District of Missouri provides that "[a]ll matters set forth in the [movant's statement of uncontroverted material facts] shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Because Plaintiff did not respond to Defendants' Motion for Summary Judgment, she did not controvert anything contained in Defendants' Statement of Uncontroverted Material Facts. Therefore, all facts contained in Defendants' Statement of Uncontroverted Material Facts are deemed admitted for purposes of the instant motion.

1

County. Among other things, the victim told Detective Vogel that Roberts held a knife to her throat, that he hit her over the head with a liquor bottle when she tried to flee, and that she accidentally dropped her purse and cell phone in the house. The victim also explained that Roberts' grandmother (the plaintiff in this action) had been upstairs in the house sleeping, but had come down to the basement upon hearing a commotion, at which point the victim was able to escape.

At approximately 3:30 a.m., Detective Vogel went to the address reported by the victim, accompanied by several other officers. When Detective Vogel knocked on the door, Plaintiff Pauletta Franklin ("Plaintiff") came to the door but did not initially open it. At that point, the officers discovered blood on the storm door on the outside of the house, which was the door through which the victim said she had escaped. Detective Vogel saw a person matching the assailant's description through a window in the door and asked Plaintiff to open the door. Although Plaintiff initially walked away, she eventually opened the door and Roberts came outside, where he was handcuffed and detained. Detective Vogel and other officers entered Plaintiff's residence and searched the basement.[2] There they discovered, *inter alia*, broken glass consistent with the victim's account of being hit over the head with a bottle and what appeared to be blood droplets and smears. The officers did not search Plaintiff's entire house, and they did not find the victim's purse or cell phone.

Later that same day, Detective Vogel presented the facts about what had happened to an assistant prosecuting attorney, who told Detective Vogel that there was enough evidence to support a warrant to search the rest of the house for the victim's purse and cell phone. Detective

---

[2] Although Defendants state that the officers believed that Plaintiff had given permission to search her basement, they do not say that Plaintiff actually did give such permission, nor do they argue in their motion that Plaintiff consented to the search.

Vogel believed that there was a fair probability that the victim's purse and cell phone were still in Plaintiff's home. Detective Vogel gave the information necessary for the search warrant application to St. Louis County police officer Robert Morley ("Detective Morley"), and Detective Morley prepared and signed it. The statements in the search warrant were accurate and were consistent with the information that Detective Vogel conveyed to Detective Morley. Detective Morley believed that everything in the search warrant was true and that there was a fair probability that the victim's purse and cell phone would be found at Plaintiff's house. The Honorable James R. Hartenbach issued a search warrant at 2:50 p.m. directing St. Louis County police to search Plaintiff's residence for the victim's cell phone and purse.

The St. Louis County tactical operations team, supervised by St. Louis County police officer John Blake ("Sergeant Blake"), executed the search warrant later that same afternoon. At the briefing prior to the execution of the warrant, the team was informed that Roberts was in custody and that an elderly woman would probably be in the house, so they should give her more time to get to the door because of her age. Upon arriving at Plaintiff's residence, the tactical operations unit knocked on the front door and announced their identity and purpose multiple times. After waiting about thirty seconds, Sergeant Blake gave the order to force entry and the tactical operations unit broke through the door.[3] Plaintiff did not call out on her way to the door to let the officers know she was coming. When the team gained entry, Plaintiff was right at the door.

---

[3] At her deposition, Plaintiff stated that "about half a minute" elapsed between the time the police knocked on her door and when they forcibly entered her residence. For purposes of the instant summary judgment motion, the Court must view the evidence in the light most favorable to Plaintiff, the non-movant. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## II. PROCEDURAL BACKGROUND

On August 14, 2014, Plaintiff filed a Petition in the Twenty-First Judicial Circuit, State of Missouri, against the St. Louis County Board of Police Commissioners ("Board"), Detective Vogel, Detective Morley, and Sergeant Blake, alleging that her Fourth Amendment rights were violated during the searches of her home on August 19, 2009. (Doc. 4). Defendants removed the case to this Court on September 11, 2014. (Doc. 1). In her Petition, Plaintiff alleged four counts under 42 U.S.C. § 1983: (I) Unlawful Entry and Search of Residence (against Board and Detective Vogel); (II) Unlawful Procurement of a Search Warrant (against Detective Vogel, Detective Morley, and Board); (III) Unlawful Use of Force to Obtain Entry Into Residence (against Sergeant Blake and Board); and (IV) Failure to Train or Supervise (against Board). (Doc. 4). This Court granted Board's motion to dismiss all of the claims against it. (Doc. 24).

Defendants filed the instant Motion for Summary Judgment on October 16, 2014. (Doc. 11).[4] Under the Court's Case Management Order, Plaintiff's opposition to the Motion for Summary Judgment was due by December 15, 2014. (Doc. 17). After Plaintiff failed to meet this deadline, the Court issued another order on January 26, 2015 requiring Plaintiff to file a response to Defendants' Motion for Summary Judgment by February 6, 2015. (Doc. 21). Plaintiff did not file any response to Defendants' Motion for Summary Judgment.[5]

## III. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial

---

[4] Because this motion was filed prior to the Court's resolution of Board's motion to dismiss, Board joined in the motion for summary judgment.
[5] Plaintiff is represented by counsel in this case.

responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.* at 324. "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotations omitted).

## IV. DISCUSSION

Three claims remain pending for resolution in this case. In Count I, Plaintiff alleges that Detective Vogel and other unnamed officers violated her Fourth Amendment rights by entering and searching her home without a warrant. In Count II, Plaintiff alleges that Detectives Vogel and Morley violated her Fourth Amendment rights by unlawfully procuring a search warrant for her home, in that the officers knowingly withheld from the judge issuing the warrant the fact that they each knew there was no more evidence to be found at Plaintiff's house. In Count III, Plaintiff alleges that Sergeant Blake violated her Fourth Amendment rights by unlawfully using force to obtain entry into her residence in order to execute the search warrant. Defendants have moved for summary judgment on all three of Plaintiff's claims, claiming that they are entitled to qualified immunity.

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 896 (8th Cir. 2014). The doctrine of qualified immunity "balances two important interests—the need to hold

5

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To promote the second interest, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because qualified immunity 'is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (ellipses in original). Thus, the Supreme Court has emphasized that courts must resolve issues of qualified immunity at the earliest possible stage of litigation. *Id.* at 231-32.

The Court uses a two-pronged test to resolve qualified immunity issues. First, "the court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (citations omitted). Second, "the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (quotation marks and citations omitted). If either prong is not satisfied, qualified immunity applies. *Id.* The Court is free to address the two prongs in either order. *Id.* at 236.

**A. Count I: Pre-Warrant Entry and Search**

In Count I, Plaintiff alleges that Detective Vogel and other unnamed officers violated her Fourth Amendment rights by entering and searching her home without a warrant and without exigent circumstances. Defendants assert that Detective Vogel did not violate Plaintiff's constitutional rights because the risk that Plaintiff might destroy evidence constituted an exigency that made the warrantless search reasonable.[6]

---

[6] To the extent that Defendants also suggest that the pre-warrant search may have been justified as a "protective sweep," that argument is unavailing. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police

6

"It is a basic principle of Fourth Amendment Law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. N.Y.*, 445 U.S. 573, 586 (1980) (quotation marks omitted); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). However, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Stuart*, 547 U.S. at 403. The Supreme Court has recognized that exigencies that may justify a warrantless search include situations where police are providing emergency assistance to an injured occupant, where police officers are "in hot pursuit of a fleeing suspect," or where police need "to prevent the imminent destruction of evidence." *Ky. v. King*, 131 S. Ct. 1849, 1856 (2011). However, "[t]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *United States v. Ramirez*, 676 F.3d 755, 760 (8th Cir. 2012) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984)). Such an urgent need "does not exist by mere supposition." *Id.*

In order to justify a warrantless search performed to prevent the destruction of evidence, "police officers must demonstrate a sufficient basis for an officer to believe that somebody in the residence . . . will imminently destroy evidence." *Id.* The relevant inquiry is whether an experienced and reasonable police officer would *objectively* have believed at the time of search that evidence might imminently be destroyed, not whether the officer's *subjective* belief in the search's reasonableness was sincere. *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004

---

officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *United States v. Anderson*, 688 F.3d 339, 346 (8th Cir. 2012) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). The search at issue here was conducted for the purpose of preventing destruction of evidence, not protecting officer safety, and it was a search for evidence of a crime, not a cursory visual inspection of places where a person might be hiding. Furthermore, the reasonableness of a post-entry protective sweep does not establish the constitutionality of the entry preceding that sweep. *Cf. United States v. Spotted Elk*, 548 F.3d 641, 651 (8th Cir. 2008).

(8th Cir. 2010); *Brigham City*, 547 U.S. at 404 ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual actor's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action. The officer's subjective motivation is irrelevant." (emphasis and brackets in original) (quotation and citation omitted)). The Supreme Court has also indicated that the "gravity of the underlying offense" is an important factor to be considered in determining whether an exigency exists. *Welsh*, 466 U.S at 753.

Here, the Defendants contend that the pre-warrant search of Plaintiff's home was justified because (1) the underlying felony for which Roberts was arrested was extremely grave, and (2) the searching officers had an objectively reasonable belief that Plaintiff would imminently destroy evidence of her grandson's crime. The Court agrees that the assault perpetrated by Roberts was a serious crime. However, the officers' basis for believing that Plaintiff would imminently destroy evidence of Roberts' crime is less obvious. Defendants' only asserted basis for the belief that Plaintiff might destroy evidence is her "close family relationship to" Roberts. Defendants do not claim that Plaintiff made any statements reflecting an intention to destroy or remove evidence, or that they heard any sounds indicating evidence might imminently be destroyed or removed. *Cf. United States v. Leveringston*, 397 F.3d 1112, 1116-17 (8th Cir. 2004) (holding that exigent circumstances justified warrantless search when police had reason to believe that narcotics were being destroyed inside suspect's hotel suite because they heard water running and the garbage disposal grinding).

The Court has found no cases in which presence of a suspect's family member in a home, standing alone, constituted a sufficient basis for an officer to believe that the person would imminently destroy evidence in the home, such that the officer could reasonably enter the home without a warrant. One district court in this circuit has found that it did not. In *United States v.*

8

*Johnson*, Criminal No. 06-392JRT/JJG, 2007 WL 1501301 (D. Minn. May 21, 2007), the defendant was arrested on suspicion of dealing cocaine. After being taken to the stationhouse, he informed the police that he had been on the phone at the time of his arrest with his wife, who was at their house. *Id.* at *2. Fearing that the wife would destroy evidence at the defendant's house, police forced entry into the house without a warrant. *Id.* The court held that this entry was not justified by exigent circumstances because "there was no evidence suggesting that the defendant's wife was involved in the drug trafficking trade or that she would destroy the evidence in question." *Id.* at *4.

Some courts in other circuits have found that a family member's presence in the home is relevant to the determination of exigent circumstances; however, those cases involved additional facts supporting the officers' suspicion that the family member in the home would destroy evidence. *See United States v. Gardner*, 553 F.2d 946, 948 (5th Cir. 1977) (holding that a warrantless search was justified by risk of destruction of evidence when the defendant's home was occupied by his "wife and partner in the drug trade"); *Seifert v. Rivera*, 933 F. Supp. 2d 307, 319 (D. Conn. 2013) (holding that a warrantless search of a suspect's home was justified by risk of destruction of evidence when the home was occupied by immediate family members who may have been accomplices or co-conspirators in the suspect's crimes); *Mears v. McCulley*, 881 F. Supp. 2d 1305, 1331 (N.D. Ala. 2012) (holding that a warrantless search was justified by the risk of destruction of evidence when the defendant's house was occupied by his girlfriend, who had already lied to the police and thus might reasonably be assumed to "be willing to hide, remove, or destroy evidence on his behalf").

The case at bar is much more similar to *Johnson* than to the out-of-circuit cases described above. As in *Johnson*, and in contrast to *Seifert*, *Gardner*, and *Mears*, the officers here had no

reason to believe that Plaintiff was involved in the crime at issue in any way, nor did they have any other specific reason to believe she would be motivated to destroy evidence. If the presence of a close family member, without more, were enough to justify a reasonable officer in believing that destruction of evidence was imminent, then warrants would become unnecessary whenever a suspect's family member happened to be in the same house where evidence of a serious offense might be located. Such a rule would pose a significant threat to the Fourth Amendment's "firm line at the entrance to the house." *Payton*, 445 U.S. at 590. It would also conflict with the Eighth Circuit's statement that exigency "does not exist by mere supposition," *Ramirez*, 676 F.3d at 760, because officers would be able to simply assume than every family member is inclined to destroy evidence instead of assessing facts to determine whether such an inclination exists.

Furthermore, in assessing the reasonableness of a warrantless search to prevent destruction of evidence, the ease with which the relevant evidence could be destroyed is a salient consideration. Not all evidence is equally easy to destroy. *See King*, 131 S. Ct. at 1857 ("Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a drain"). Here, the officers knew based on the victim's account of her assault that the relevant evidence located in Plaintiff's house would likely include broken glass, blood, the victim's purse and cell phone, and perhaps other forensic evidence such as fingerprints and fibers. Unlike narcotics, this evidence would not have been easy for Plaintiff to dispose of while the police waited for a warrant, even if she had been so inclined. This also cuts against the reasonableness of the police's warrantless search.

In light of the above, the Court finds that Defendants have not met their burden of demonstrating exigent circumstances to justify the warrantless entry and search of Plaintiff's home, because they have not "demonstrate[d] a sufficient basis for an officer to believe that

[Plaintiff] . . . [would] imminently destroy evidence." *See Ramirez*, 676 F.3d at 760. The facts, viewed in the light most favorable to Plaintiff as the nonmoving party, demonstrate a violation of Plaintiff's Fourth Amendment rights. Therefore, Detective Vogel is not entitled to summary judgment on Count I based on the first prong of the qualified immunity analysis.

Under the second prong of the qualified immunity analysis, the Court must determine whether the right in question was "clearly established at the time of [Detective Vogel's] alleged misconduct." *De Boise*, 760 F.3d at 896 (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). "A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).

Although the Court concludes that the facts here do not support a finding of exigent circumstances that justified the warrantless search of Plaintiff's home, the Court does not find that "existing precedent" has placed that question "beyond debate." The Court has located no Eighth Circuit cases addressing facts similar to those here, involving a close family member who was inside a home where evidence of a serious crime was located. Moreover, the out-of-circuit cases cited above do support the position that a close family member's presence in a home is a reasonable consideration in evaluating the likelihood of imminent destruction of evidence. Given the lack of Eighth Circuit case law in this area, combined with the case law from other circuits and the seriousness of the crime at issue here, the Court also cannot say that "any reasonable official" in Detective Vogel's position would have understood that he was violating Plaintiff's

rights by entering her home without a warrant. Accordingly, there was no violation of a "clearly established" right, and Detective Vogel is entitled to qualified immunity on Plaintiff's pre-warrant search claim.

### B. Count II: Unlawful Procurement of a Search Warrant

In Count II, Plaintiff alleges that Detective Vogel and/or Detective Morley violated her Fourth Amendment rights by fraudulently obtaining a warrant to search her home. Specifically, Plaintiff contends that the detectives intentionally omitted from their search warrant affidavit the fact that they knew or believed there was no additional evidence of Roberts' crimes to be found in Plaintiff's residence. Defendants argue that they are entitled to qualified immunity because Plaintiff cannot show that her Fourth Amendment rights were violated.

If a warrant is based on an affidavit containing either a deliberate falsehood or a reckless disregard for the truth, then that warrant violates the Fourth Amendment, and the officer who submitted the affidavit may be subject to liability under 42 U.S.C. § 1983. *Block v. Dupic*, 758 F.3d 1062, 1063 (8th Cir. 2014). To show that a police officer's omissions from a warrant affidavit rise to the level of a Fourth Amendment violation, a plaintiff bears the burden of proving "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Id.* at 1063-64 (quoting *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004)). "Such a showing is not easily made." *United States v. Engler*, 521 F.3d 965, 969 (8th Cir. 2008).

Here, Plaintiff has failed to produce any evidence whatsoever to substantiate her allegation that Detective Vogel or Detective Morley knew or believed that there was no evidence to be found in Plaintiff's home or that either officer intentionally or recklessly omitted that

information from the search warrant affidavit. In contrast, Defendants have presented evidence that both Detective Vogel and Detective Morley *did* believe there was evidence to be found in Plaintiff's home, including evidence that the officers had not found the victim's cell phone or purse in the first search, evidence that the officers had not searched Plaintiff's entire house in the first search, and evidence that both officers believed that there was a fair probability that the victim's purse and cell phone would be found at Plaintiff's house. Because Defendants' uncontroverted evidence shows that no violation of Plaintiff's rights occurred with respect to Count II, Detective Vogel and Detective Morley are entitled to summary judgment on this claim based on the first prong of the qualified immunity analysis.

**C. Count III: Unlawful Use of Force to Obtain Entry Into Plaintiff's Residence**

In Count III, Plaintiff alleges that Sergeant Blake violated her Fourth Amendment rights by forcibly breaching her door in order to execute a search warrant after waiting only thirty seconds for Plaintiff to come to the door. Defendants again argue that they are entitled to summary judgment based on qualified immunity because the entry did not violate Plaintiff's Fourth Amendment rights.

The Fourth Amendment's reasonableness standard generally requires that police officers, in executing a search warrant, must announce their presence and authority before forcibly entering a suspect's residence. *United States v. Banks*, 540 U.S. 31, 36 (2003) (citing *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995)). "Absent exigency, the police must knock and receive an actual refusal or wait out the time necessary to infer one" before they may forcibly enter a dwelling pursuant to a warrant.[7] *Id.* at 43 (2003). One of the chief purposes of this requirement is

---

[7] After knocking and waiting for a sufficient amount of time, the police may interpret a lack of response as a refusal, because "[r]arely if ever is there an affirmative refusal. More often the officers meet with silence as the occupants seek to destroy evidence or escape." *United States v.*

13

to afford the occupant a chance to "save his door." *Wilson*, 514 U.S. at 935. *See also Banks*, 540 U.S. at 41 ("One point in making an officer knock and announce, then, is to give a person inside the chance to save his door. That is why, in the case with no reason to suspect an immediate risk of frustration or futility in waiting at all, the reasonable wait may well be longer when police make a forced entry, since they ought to be more certain the occupant has had time to answer the door").

"[T]he determination of whether an officer was justified in forcing entry after announcing his presence and purpose does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant." *United States v. Stropes*, 387 F.3d 766, 772 (8th Cir. 2004) (quoting *United States v. Lucht*, 18 F.3d 541, 549 (8th Cir. 1994)); *see also Banks*, 540 U.S. at 39 ("[T]he facts known to the police are what count in judging reasonable waiting time."). Circumstances relevant to this inquiry include the size of the residence, the time of day (and whether the occupant was likely to be awake), the potential danger the home's occupants posed to police, and how quickly evidence (such as drugs) could have been destroyed after police knocked and announced their presence. *See Banks*, 540 U.S. at 38-40 (holding that although the "call is a close one," a fifteen-to twenty-second wait before forcible entry was reasonable to execute an afternoon search where there was a risk the occupant would "rid his quarters of cocaine" if the officers waited any longer); *United States v. Morris*, 436 F.3d 1045, 1049 (8th Cir. 2006) (ten-second wait was reasonable given "the risk of destruction of evidence usually present in drug trafficking investigations, the relatively modest size of the home that an occupant would have to traverse to answer the door, and the likelihood that occupants would be awake at the time of the search"); *Stropes*, 387 F.3d at 773 (holding that

---

*Lucht*, 18 F.3d 541, 549 (8th Cir. 1994) (quoting *United States v. Ortiz*, 445 F.2d 1100, 1102 n. 2 (10th Cir. 1971)).

"fifteen to twenty seconds is a sufficient time to wait before entering the home of a suspected drug dealer to search for multiple stolen firearms" and noting that "officer safety is a clear concern" in such a case); *United States v. Vesey*, 338 F.3d 913, 916 (8th Cir. 2003) (a ten-second wait was reasonable where the apartment was small, the officers arrived in the afternoon when it was likely that the occupants were awake, and the police suspected drugs were in the apartment); *United States v. Goodson*, 165 F.3d 610, 614 (8th Cir. 1999) (a twenty-second wait was reasonable where the residence was a one-story ranch house, there was a potential that the residents could flush crack cocaine down a toilet, and the occupant had a record for assault with a deadly weapon); *Lucht*, 18 F.3d at 549 (a twenty-second wait and a twenty-five to sixty-second wait were reasonable where there was probable cause to believe that the suspects possessed narcotics and where their houses were small).

The Court has some doubts about whether, under the circumstances of this case, thirty seconds was a sufficiently long time for the officers to wait before forcibly entering Plaintiff's home. The officers knew that they were knocking on the door of an elderly woman who might require a longer-than-average time to get to her door. They knew that the criminal suspect was already in custody at the time, and they had no reason to believe that Plaintiff posed any danger to them. Unlike narcotics, the evidence the officers were seeking—a cell phone and purse—could not be easily disposed of in a few seconds or minutes. These facts distinguish the instant case from those discussed above, in which waiting periods of ten to twenty seconds were found to be reasonable. The only factor weighing in favor of a short wait time here is that the search warrant was executed in the daytime, at a time when Plaintiff was likely to be awake and to hear the officers' knocks. Given that the Supreme Court found the reasonableness of a wait of fifteen to twenty seconds to be a "close" call in a case involving a daytime search and a risk of

destruction of drug evidence, *Banks*, 540 U.S. at 38, it may well have been unreasonable for the officers here to wait only thirty seconds before forcibly entering Plaintiff's home.

However, the Court need not resolve the difficult question of whether the forcible entry after thirty seconds here violated Plaintiff's Fourth Amendment rights, because it is clear that Sergeant Vogel is entitled to summary judgment based on the second prong of the qualified immunity analysis. In light of the fact that the bulk of the case law has found wait times reasonable even where they were significantly shorter than the ones at issue here, and in light of the lack of case law addressing how long officers must wait in circumstances similar to those here, the Court certainly cannot say that Plaintiff had a right to be free of forcible entry in this case whose "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 134 S. Ct. at 2023. Therefore, Plaintiff cannot demonstrate a violation of a "clearly established" right, and Sergeant Blake is entitled to qualified immunity on Count III.

### D. State Law Claims

Defendants also argue that if Plaintiff's claims are in any way construed to be claims under Missouri state law, such claims are barred by the three-year statute of limitations in Mo. Rev. Stat. § 516.130. The Court does not construe Plaintiff's Petition to include any claims arising under Missouri state law. However, the Court agrees with Defendants that if the Petition did include such claims, they would be time-barred because the claims arose in August 2009 and this action was not filed until more than five years later. *See* Mo. Rev. Stat. § 516.130 (creating three-year time limit for "[a]n action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office . . . ."); *Dilley v. Valentine*, 401 S.W.3d 544, 553 (Mo. Ct. App. 2013) (affirming summary judgment in an action

16

against a police officer acting in his official capacity because the action was filed outside the three-year time limit in Mo. Rev. Stat. 516.130).

V. **CONCLUSION**

For the foregoing reasons, Defendants Robert Vogel, Robert Morley, and John Blake are entitled to qualified immunity on all of Plaintiff's claims. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 11) is **GRANTED**. The Court will issue a separate judgment consistent with this Memorandum and Order.

Dated this 13th day of July, 2015

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE